JERRY E. SMITH, Circuit Judge,
dissenting:
In the majority’s view, to “bring such action,” 15 U.S.C. § 1692i(a)(2), refers to something different from “[a]n action ... may be brought,” id. § 1692k(d). At first blush, that notion is counterintuitive; on careful examination, it is demonstrable error: Those nearly identical phrases are found in the same act and should be given the same meaning. I respectfully dissent.
I.
A.
To interpret “bring such action,” we ought to begin, “[a]s in any statutory construction ease[,] ... with the statutory text, and proceed from the understanding that [ujnless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.”[1] “It is well established that when the statute’s language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.” Lamie v. U.S. Tr., 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quotation marks and citation omitted). “[T]he meaning of statutory language, plain or not, *451 depends on context.” King v. St. Vincent’s Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991).
The dictionary defines to “bring an action” as to “sue” or “institute legal proceedings.” Black’s Law Dictionary 219 (9th ed.2009). To “sue” is “[t]o institute a lawsuit against (another party),” id. at 1570, and to “institute” is, in turn “[t]o begin or start; commence,” id. at 868. Thus, “[a] suit is brought when in law it is commenced, ... the two words evidently mean the same thing, and are used interchangeably.” Goldenberg v. Murphy, 108 U.S. 162, 163, 2 S.Ct. 388, 27 L.Ed. 686 (1883).
In the context of federal law, a suit is brought or commenced when it is filed. Under the Federal Rules of Civil Procedure, for example, “[a] civil action is commenced by filing a complaint with the court.” Fed.R.Civ.P. 3.[2] Because of Rule 3, “[i]n a suit on a right created by federal law, filing a complaint suffices to satisfy the statute of limitations.” Henderson v. United States, 517 U.S. 654, 657 n. 2, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996).
When a “cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not barred if it has been ‘commenced’ in compliance with Rule 3 within the borrowed period.” West v. Conrail, 481 U.S. 35, 39, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987). That is so even where the statute from which the limitations period was borrowed requires service within the limitations period. Id. at 38, 107 S.Ct. 1538. Not surprisingly, many federal statutes use “file” and “bring” interchangeably,[3] distinguish bringing suit from serving process,[4] or both.[5]
B.
The panel majority has no difficulty interpreting “[a]n action ... may be brought,” § 1692k(d), according to its ordinary meaning under federal law. The majority correctly notes that Serna “filed” his complaint on August 12, 2011, then “refiled” it on August 18. Considering wheth *452 er Serna’s suit was timely, the majority uses “bring suit” and “file suit” interchangeably:
The FDCPA’s limitations period provides that Serna’s FDCPA action may be brought ... within one year from the date on which [Onwuteaka’s alleged violation of § 1692i(a)(2)] occurred]. See § 1692k(d). Because the date of the violation itself is not included in calculating the limitations period, Onwuteaka argues that (assuming August 14 was the trigger date) Serna would have been required to file his complaint by August 14, 2011; however, because that date was a Sunday, his limitations period expired on August 15, 2011. See Fed. R.Crv.P. 6(a)(1)(A), (C). Serna filed his original complaint and IFP application on August 12, 2011.... Because Rule 6(d) provided Serna three additional days, his filing on August 18, 2011, was timely.
(Emphasis added, first ellipses in original.)
“Absent some congressional indication to the contrary, we decline to give the same term in the same Act a different meaning depending on whether the rights of the plaintiff or the defendant are at issue.” Desert Palace, Inc. v. Costa, 539 U.S. 90, 101, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). Indeed, “[t]he normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning.” Sorenson v. Sec’y of Treasury, 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) (quotation marks and citations omitted). Nothing in the text or context of the FDCPA indicates that to “bring an action” should be interpreted one way in § 1692k(d) and another way in § 1692i(a)(2).
By any reasonable reading of the rules of statutory construction, the terms should be given the same meaning. Because Serna sued more than a year after Onwuteaka did, Serna’s action was untimely.
II.
Rather than confront the text of the statute directly, the majority relies on canons of construction and legislative history. But “Fifth Circuit law is crystal clear that when, as here, the language of a statute is unambiguous, this [e]ourt has no need to and will not defer to extrinsic aids or legislative history.” Guilzon v. Comm’r, 985 F.2d 819, 823 (5th Cir.1993); accord Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir.2002). “Because the plain language of the statute is unambiguous, we need not examine the legislative history.” Conway v. United States, 647 F.3d 228, 236 (5th Cir.2011) (Haynes, J.) “Bring such action” could be ambiguous in some other context — in some jurisdictions an action is “brought” when filed and in others is “brought” when process is served.[6] But “[ajmbiguity is a creature not of definitional possibilities but of statutory context.” Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). In the broader context of federal law, and in the narrower context of the FDCPA, “bring such action” is not ambiguous.
Instead of identifying an ambiguity in the text or context of the statute, the majority relies on our sister circuit’s construction of a different phrase — “attempt to collect”[7] — from a separate section of *453 the statute, 15 U.S.C. § 1692f.[8] Regardless of the remedial nature of the statute, however,[9] the majority has not shown ambiguity and cannot show absurdity.[10]
“In the absence of ambiguity, our inquiry ends with the text itself.... [Ajbsent any indication that doing so would frustrate Congress’s clear intention or yield patent absurdity, our obligation is to apply the statute as Congress wrote it.” Hamilton, 310 F.3d at 391-92 (citation omitted; alteration in original). The plain meaning of the statute — as written and not as annotated by the panel majority — should be invoked to render Serna’s suit untimely.
III.
Spelunking unnecessarily in the depths of legislative history, the majority loses its way.[11] It acknowledges that the FTC consistently faulted debt collectors for “filing” or “instituting” suits in distant fora and that § 1692i(a)(2) “addresses the problem *454 of ‘forum abuse,’ an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to appear,” S.Rep. No. 95-382, at 5, reprinted in 1977 U.S.C.C.A.N. 1695, 1699 (emphasis added). As described in that Senate Report, the bill adopted “the ‘fair venue standards’ developed by the [FTC]. A debt collector who files suit must do so either where the consumer resides or where the underlying contract was signed. When an action is against real property, it must be brought where such property is located.” Id. (emphasis added).
There is no great mystery here; taken at face value, the legislative history indicates that Congress intended to codify the FTC’s rule against filing suit in a distant forum, so it prohibited bringing suit in a distant forum — a synonymous term under federal law. Contra the majority, “bring” is not a broader term than “file” under federal law; the very Senate Report on which the majority relies uses them interchangeably.
Even if there were some uncertainty as to why Congress used “bring such action” instead of “file such action,” it is easily explained. Perhaps Congress wanted to use the same term for the same thing in different sections of the same Act. Compare 15 U.S.C. § 1692i(a)(2), with 15 U.S.C. § 1692k(d). Or maybe Congress wanted to use a standard phrase found throughout the United States Code.[12] In any event, the legislative history of the
FDCPA supports the plain meaning of § 1692i(a)(2); Serna’s suit was untimely.[13]
Because the majority distinguishes that which Congress has made the same, I respectfully dissent.

. Sebelius v. Cloer, - U.S. -, 133 S.Ct. 1886, 1893, 185 L.Ed.2d 1003 (2013) (quotation marks and citation omitted; second alteration in original); accord Ford Motor Credit Co. v. Dale (In re Dale), 582 F.3d 568, 573 (5th Cir.2009) (Haynes, J.) (observing that we begin with "the plain language of the statute,” then consult the "ordinary or generally understood meaning”).

. The original Advisory Committee debated whether a suit should be commenced by filing or, instead, filing plus something else; "[a]t one time a majority of the Committee favored the so-called ‘hip-pocket’ method of commencing an action, and the proposed text of what is now Rule 3 provided that an action would be commenced by the service of process.” 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1051, at 209 (3d ed.2002). Others proposed that an action would commence upon filing, "but with a further provision that the action should abate unless service was made within sixty days.” Id. The committee settled on the current language, id., which has not been amended except for stylistic purposes.

. See, e.g„ 12 U.S.C. § 4617(5)("(A) In general[,] [i]f the Agency is appointed conservator or receiver under this section, the regulated entity may, within 30 days of such appointment, bring an action in the United States district court.... (B) Upon the filing of an action under subparagraph (A)....”) (emphasis added); 21 U.S.C. § 355(D)(i) ("Filing of civil action[:j ... [T]he applicant referred to in such subclause may ... bring a civil action. ...”) (emphasis added).

. See, e.g., 7 U.S.C. § 25(c) ("Any such action shall be brought not later than two years after the date the cause of action arises.... Process in such action may be served in any judicial district....”); 15 U.S.C. § 5712(c) ("Any civil action brought under this section ... may be brought in the district wherein the defendant is found ... and process in such cases may be served in any district....”) (emphasis added).

. See 18 U.S.C. § 1956(b)(2) (“For purposes of adjudicating an action filed ... the district courts shall have jurisdiction over any foreign person ... against whom the action is brought, if service of process upon the foreign person is made.... ”).

. Compare, e.g., La.Code Civ. Proc. Ann. art. 421 ("A civil action is a demand for the enforcement of a legal right. It is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction.”), with, e.g., Minn. R. Civ. P. 3.01(a) ("A civil action is commenced against each defendant: (a) when the summons is served upon that defendant.”).

. Johnson v. Riddle, 305 F.3d 1107, 1114 (10th Cir.2002).

.Even if Johnson v. Riddle were on point, its reasoning does not, in the majority's words, "strongly support!]” its holding. The Johnson v. Riddle court, 305 F.3d at 1113, held that “the plaintiff does not have a complete and present cause of action, and thus no violation occurs within the meaning of § 1692k(d), until the plaintiff has been served.” ‘TT]he fact that a party that has committed half an actionable wrong,” filing suit, "is likely to commit the other half,” serving process, “cannot suffice to create a complete and present cause of action.” Id. at 1114. But nothing in the text of § 1692i(a) divides "bring such action” into two halves of an actionable wrong. Claiming, as the majority does in following Johnson v. Riddle, that the plaintiff does not have a complete and present cause of action until notified begs the question whether the relevant violation is filing or filing plus something more.
As did the Johnson v. Riddle court, id. at 1114 n. 4, the majority pretends that its approach does not conflict with Naas v. Stolman, 130 F.3d 892, 893 (9th Cir.1997). Because no federal court of appeals had answered “at which point the statute of limitations begins to run when the alleged violation of the Act is the filing of a lawsuit,” the Ninth Circuit considered two district court opinions. Id. In one, "the court held that the violation occurred and the statute of limitations started to run on either the day the complaint was filed or the day it was served, but deciding between the two alternatives was unnecessary in that case.” Id. (citing Prade v. Jackson & Kelly, 941 F.Supp. 596, 600 (N.D.W.Va.1996)) (emphasis added). In the other, the court was "more precise, holding that the statute of limitations began to run from the day garnishment proceedings were initiated.” Id. (citing Blakemore v. Pekay, 895 F.Supp. 972, 982-83 (N.D.Ill.1995)) (emphasis added).
The Ninth Circuit thus considered the possibility that limitations began to run on service, but it stated its holding in precise terms: Where "the alleged violation of the Act was ... the bringing of the suit itself ... the statute of limitations began to run on the filing of the complaint.” Id. Because the Ninth Circuit was not construing § 1692i(a), the majority technically may not be creating a circuit split, but there is a conflict between the two approaches.
The majority's invocation of Mattson v. U.S. West Communications, Inc., 967 F.2d 259, 261 (8th Cir.1992), is a red herring. However useful the Eighth Circuit’s test might be in determining when, exactly, a debt collector violated the ambiguous provisions of § 1692e or § 1692f, it is irrelevant to the question of when a debt collector brought an action in a distant forum.

. Hamilton, 310 F.3d at 392.

. That unscrupulous debt collectors might cut into the statute of limitations by delaying service might justify applying a discovery rule or equitable tolling but not a finding of absurdity.

. The majority’s approach to statutory interpretation is odd to say the least. Usually, "[t]he starting point in discerning congressional intent is the existing statutory text and not the predecessor statutes.” Lamie, 540 U.S. at 534, 124 S.Ct. 1023. Without demonstrating an ambiguity in the text of the statute — a prerequisite for considering legislative history — the majority attempts to create a mystery by comparing the statutory text not even with a predecessor statute, but with the legislative history.

. See, e.g., 15 U.S.C. § 2619 ("Any civil action ... shall be brought ... action brought ... shall be brought ... suits brought ... action brought ... action brought ... actions brought ... action is brought.”); see also supra notes 3-5. Interpreting these other statutes, must we see whether the legislative history used "file” before we conclude that "bring” and "file” are synonyms?

. Finally, I am baffled by the majority’s digression into Texas law. We do not usually interpret the terms of federal statutes by seeing how they are used in one particular state's laws. If the point is that Texas distinguishes between filing a pleading and bringing suit, what relevance does that distinction have here? The terms are interchangeable under federal law, as the majority implicitly acknowledges when interpreting and applying § 1692k(d).